UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TRAVIS L. PETERSON,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>Defendant. | CASE NO. 13-cv-05072 RJB<br><br>REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT<br><br>Noting Date: May 23, 2014 |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (*see* Dkt. Nos. 19, 22, 23).

After considering and reviewing the record, the Court finds that the ALJ erred in her evaluation of the medical evidence by failing to offer specific and legitimate reasons supported by substantial evidence to reject the opinions of three examining psychologists

who concluded that plaintiff had limitations work related functioning—including the ability to perform routine tasks and the ability to withstand pressures in a normal work setting—that would preclude employment.

## BACKGROUND

Plaintiff, TRAVIS L. PETERSON, was born in 1971 and was 37 years old on the alleged date of disability onset, April 1, 2008 (*see* Tr. 48-49, 51). Plaintiff was in special education classes through sixth grade and later obtained his GED with accommodations (Tr. 63-65). He has work experience as a log truck driver and a backhoe/forklift operator (Tr. 69-72). Plaintiff last worked in housekeeping at a casino, but quit because it was "very frustrating" (Tr. 66).

At the time of the hearing, plaintiff was living with two roommates in a house (Tr. 51).

Plaintiff has at least the severe impairments of "substance abuse and mood disorder (20 CFR 404.1520(c) and 416.920(c))" (Tr. 28).

## PROCEDURAL HISTORY

On September 2, 2008, plaintiff filed concurrent applications for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act (Tr. 195-99). These applications were denied (Tr. 119-20). On April 28, 2009, plaintiff again filed applications for DIB and SSI benefits (*see* Tr. 200-02, 203-06). These applications were denied initially and on reconsideration (Tr. 119-22). Plaintiff's requested hearing was held before Administrative Law Judge Laura Valente

("the ALJ") on March 1, 2011 (*see* Tr. 44-118). On April 13, 2011, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr.22-43).

On November 28, 2012, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 3-8). *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision on February 5, 2013 (*see* Dkt. Nos. 1, 3). Defendant filed the sealed administrative record regarding this matter ("Tr.") on July 18, 2013 (*see* Dkt. Nos. 14, 15).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether the ALJ properly evaluated the medical evidence; (2) Whether the ALJ properly evaluated plaintiff's testimony; (3) Whether the ALJ properly evaluated the lay evidence; (4) Whether the ALJ properly assessed plaintiff's residual functional capacity; and (5) Whether the ALJ erred by basing her step four and step five findings on a residual functional capacity assessment that did not include all of plaintiff's limitations (*see* Dkt. No. 19, p. 1).

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 3

## DISCUSSION

**(1)     Whether the ALJ properly evaluated the medical evidence.**

Plaintiff argues the ALJ erred in rejecting the opinions of several examining psychologists who opined that plaintiff had marked limitations in multiple areas of work related functioning.  Dkt. No. 19, pp. 3-8.  The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion an examining psychologist.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if an examining psychologist's opinion is contradicted, that opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester,* 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  In addition, the ALJ must explain why her own interpretations, rather than those of the doctors, are correct. *Reddick,* 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

A. <u>Mary G. Mangione-Lambie, Ph.D.</u>

Plaintiff argues the ALJ erred by failing to discuss fully examining psychologist Mary G. Mangione-Lambie, Ph.D.'s opinion that plaintiff had marked limitations in

multiple areas of work related functioning, including the ability to perform routine tasks and respond appropriately to and tolerate the pressure and expectations of a normal work setting (Dkt. No. 19, p 3-5; see Tr. 555-61).  Dr. Mangione-Lambie defined a marked limitation as causing a very significant interference with basic work activities (Tr. 555).  Dr. Mangione-Lambie's opinion is important to the ALJ's ultimate non disability determination because the vocational expert ("VE") testified that the inability to perform routine tasks and the inability to withstand the pressures of a normal work setting would probably preclude any employment (Tr. 117).

   Dr. Mangione-Lambie evaluated plaintiff in March of 2009 and  completed a clinical interview and mental status examination ("MSE") (Tr. 555-61).  Plaintiff exhibited abnormalities on MSE including constricted or odd affect, confused thought processes, and concrete, limited judgment and insight (Tr. 557, 559).  Dr. Mangione-Lambie observed plaintiff was easily confused, needed questions repeated or clarified and appeared at times to be responding to internal stimuli (Tr. 557).  Dr. Mangione-Lambie questioned plaintiff regarding his history of drug and alcohol abuse and was aware that plaintiff was charged with driving under the influence ("DUI") in 2007 (Tr. 557, 561).  Plaintiff reported to Dr. Mangione-Lambie that he was in outpatient treatment for the DUI and that he had been sober for approximately two years (Tr. 557, 61).  Based on her examination, Dr. Mangione-Lambie diagnosed schizophrenia and opined plaintiff had marked limitations in multiple areas of work related functioning  (Tr. 556-57).

At step two of the sequential evaluation, the ALJ rejected Dr. Mangione-Lambie's diagnosis of schizophrenia because this diagnosis was undercut by Dr. Mangione-Lambie's determination that there was no indication of current drug or alcohol abuse, when other evidence in the record suggested plaintiff was using alcohol and marijuana (Tr. 29, *citing* 82-83, 533, 556-57).  For this reason, the ALJ found schizophrenia was not a medically determinable, severe impairment (Tr. 34).   The ALJ concluded instead that plaintiff had the severe impairments of substance abuse and mood disorder (Tr. 28).  The ALJ did not discuss Dr. Mangione-Lambie's evaluation at any subsequent step of the sequential evaluation process nor offer any other reason to reject the functional limitations opined by Dr. Mangione-Lambie (Tr. 25-37).

The Commissioner argues that the ALJ properly rejected Dr. Mangione-Lambie's opinion regarding plaintiff's functional limitations, because Dr. Mangione-Lambie was unaware of plaintiff's concurrent marijuana and alcohol use. Dkt. No. 22, pp. 8-9.  The evidence regarding plaintiff's marijuana and alcohol use during the relevant period is contradictory.  For example, plaintiff testified that he quit drinking while completing court ordered drug and alcohol treatment following his 2007 DUI (Tr. 54-55, 82; *accord* 346-47, 378, 388, 505-08, 557).  In 2007, plaintiff's primary care provider commented on plaintiff's court ordered treatment and opined that plaintiff appeared to be in a great deal of denial regarding his alcohol use (Tr. 341).  In 2009, plaintiff reported to an emergency room physician that he drank alcohol occasionally (Tr. 419).  In 2011, plaintiff reported that he drank alcohol once a month (Tr. 533).

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 6

Similarly, plaintiff testified in 2012 that he smoked marijuana only one time since completing treatment for the DUI (Tr. 83). However in 2010, plaintiff asked his mental health provider to help him get a medical marijuana card because plaintiff felt marijuana worked better than prescribed medication (Tr. 487). During a 2011 psychological evaluation, plaintiff admitted to using marijuana daily for a period of ten years ending in 2009 or 2010 (Tr. 533). At the same evaluation, however, plaintiff reported stopping marijuana use after his DUI (Tr. 533).

As the Commissioner points out, state agency reviewing psychologist Cynthia Collingwood, Ph.D., opined plaintiff's psychotic symptoms "may well have been substance induced rather than from bipolar or schizophrenia" (Tr. 406). And in 2011, consultative examiner Cheryl Hart, Psy.D., diagnosed plaintiff with polysubstance dependency (Tr. 537). Therefore, because Dr. Mangione-Lambie's opinion was contradicted by Dr. Collingwood's opinion, the ALJ was required to set forth specific and legitimate reasons, supported by substantial evidence in the record. *See Lester,* 81 F.3d at 830-31.

Weighing both the evidence that supports and that which detracts from the ALJ's conclusion, a reasonable mind might accept as adequate the reason offered by the ALJ, that Dr. Mangione-Lambie was unaware of plaintiff's concurrent substance use, for discounting Dr. Mangione-Lambie's diagnosis of schizophrenia. *See Andrews,* 53 F.3d at 1039 (9th Cir. 1995) (*citing Magallanes,* 881 F.2d at 750).

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 7

However, regardless of the etiology, Dr. Mangione-Lambie's opinion regarding plaintiff's symptoms and limitations (schizophrenia or substance induced psychotic disorder), was based on objective findings in the MSE and first hand observations of plaintiff during the examination. *See* Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 4 (Oxford University Press 1993) ("Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation.")(emphasis in original). To reject these limitations because they may have been caused by substance abuse instead of schizophrenia is improper because the ALJ found at step two that substance abuse was a severe impairment (Tr. 28). An ALJ "must consider limitations and restrictions imposed by all of [plaintiff's] impairments, even those that are 'not severe'". Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *5. For this reason, the ALJ did not provide a specific and legitimate reason supported by substantial evidence to reject the opinion of Dr. Mangione-Lambie regarding plaintiffs functional limitations. *Lester,* 81 F.3d at 830-31.

B. <u>Kristi Breen, Ph.D. and Richard Washburn, Ph.D</u>.

Plaintiff also argues that the ALJ improperly rejected the medical opinions of examining psychologists Drs. Breen and Washburn who opined that plaintiff had marked to severe limitations in a variety of work related activities including the ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting (Tr. 347-48, 464-65). Dr. Breen also opined that plaintiff would have marked limitations in the ability to perform routine tasks (Tr. 348). In these reports, a marked limitation is

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 8

defined as a very significant interference with the individual's ability to perform basic work related activities (Tr. 346, 463). As discussed previously, these limitations are significant because the VE testified that the inability to perform these activities would preclude employment (Tr. 117).

The ALJ offered two reasons to reject the opinions of Drs. Breen and Washburn: (1) their conclusions relied on plaintiff's complaints without reference to objective medical findings, and (2) their reports indicated plaintiff was not currently using drugs or alcohol, which was contradicted by other evidence in the record (Tr. 35). Neither reason, however, is a specific and legitimate reason supported by substantial evidence necessary to reject the testimony of an examining psychologist.  *See Lester*, 81 F.3d at 830-31.

The first reason offered by the ALJ -- that Drs. Breen and Washburn relied on plaintiff's complaints without reference to objective medical findings -- is not supported by the record.  Both Drs. Breen and Washburn conducted MSE's and noted abnormalities including concentration difficulties, communication difficulties, poor problem solving ability, poor decision making ability, poor ability to follow directions, some difficulty maintaining mental set, limited/poor insight and borderline estimated intelligence (Tr. 348, 350, 469).  The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination,

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 9

the Mental Status Examination is termed the *objective* portion of the patient evaluation."
*Id.* at 4 (emphasis in original).

A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*id.* at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted). "When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professional trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation." *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (*quoting Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987) (*quoting Lebus v. Harris*, 526 F.Supp. 56, 60 (N.D. Cal. 1981))).

In addition to the MSEs, both Drs. Breen and Washburn conducted psychological testing. Dr. Breen administered two tests, the Burns Anxiety Inventory ("BAI") and the Burns Depression Inventory ("BDI") (Tr. 352-54). Plaintiff's scores on these tests indicated a moderate to severe level of depression and anxiety (Tr. 349). Dr. Washburn administered the Burns Mood Survey (Tr. 468). Plaintiff's score on this survey indicated the need for treatment (Tr. 469). Dr. Washburn also noted in his report that he observed plaintiff's depression and anxiety symptoms first hand during the examination (Tr. 463).

The record supports that Drs. Breen and Washburn relied on objective measures to form their opinions regarding plaintiff's functional limitations. The ALJ's rejection of this evidence, based on plaintiff's subjective complaints, was improper.

The ALJ also rejected the opinions of Drs. Breen and Washburn because their assessment that plaintiff was not currently using drugs or alcohol was contradicted by other evidence (Tr. 35). The ALJ concluded that the marked anxiety symptoms observed by Dr. Washburn during his evaluation could be explained by plaintiff's substance abuse (Tr. 35). This is not a specific and legitimate reason supported by substantial evidence necessary to reject the testimony of an examining psychologist. *Lester*, 81 F.3d at 830-31.

Although this rationale, in conjunction with Dr. Collingwood's opinion that plaintiff's psychotic symptoms could be attributed to substance use and Dr. Hart's diagnosis of polysubstance dependency, may have been sufficient to reject Dr. Mangione-Lambie's diagnosis of schizophrenia, it is not sufficient to reject the functional limitations opined by Drs. Breen and Washburn. No doctor attributed plaintiff's anxiety, depression, or cognitive symptoms to plaintiff's alcohol and marijuana use. Also, as discussed previously, it is improper to reject a functional limitation because it is attributable to substance abuse when substance abuse has been determined to be a severe impairment. *See* SSR 96-8p, 1996 WL 374184 *5.

For these reasons undersigned recommends the ALJ's decision be reversed and remanded for reevaluation of the medical evidence.

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 11

**(2) Whether remand is necessary for consideration of new evidence.**

Plaintiff requests that this Court consider new evidence regarding the qualifications of consultative examiner Dr. Hart. Dkt. No. 19, pp. 13-14, Attachment #1. Pursuant to sentence six of 42 U.S.C. § 405(g), the Court may remand a claim for additional evidence to be taken before the Commissioner upon a showing that the new evidence is material and there is good cause for the failure to incorporate the evidence into the record in a prior proceeding. Here, plaintiff has not established good cause. For this reason, remand for consideration of plaintiff's new evidence is not appropriate.

CONCLUSION

The ALJ erred in evaluating the medical evidence, as the ALJ failed to provide specific and legitimate reasons supported by substantial evidence necessary to reject the opinions of three examining psychologists.

Based on these reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration. **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C).

1 | Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the

2 | matter for consideration on May 23, 2014, as noted in the caption.

3 |       Dated this 30th day of April, 2014.

                                   /s/ J. Richard Creatura

                                  J. Richard Creatura
                                  United States Magistrate Judge